# In the United States District Court
## for the Southern District of Georgia
## Waycross Division

THEODORE MOORE,

    Plaintiff,

    v.

CITY OF DOUGLAS, a municipal
corporation; TERRELL JACOBS;
TIMOTHY WHITE; and DAVID
HESTER,

    Defendants.

CV 513-118

## ORDER

Plaintiff filed the present action seeking relief for racial discrimination pursuant to the Equal Protection Clause of the Fourteenth Amendment under 42 U.S.C. § 1983, racial discrimination under 42 U.S.C. § 1981, and discrimination and harassment pursuant to Title VII of the Civil Rights Act of 1964. Defendants contend that Plaintiff's claims are time barred, as the applicable statute of limitations is two years and Plaintiff waited approximately three years before filing the instant suit. In light of the undisputed facts of this case, the Court **GRANTS** Defendants' Motion for Summary Judgment (Dkt. No. 26) for the reasons set forth below.

## FACTUAL BACKGROUND

Although the Defendants deny many of the factual allegations made by the Plaintiff, the Court must accept as true Plaintiff's version of the events in assessing a Motion for Summary Judgment. For the purposes of this Motion, the Court views disputed facts in favor of the Plaintiff. In 2000, Plaintiff, an African-American man, began working for the City of Douglas Fire Department (the "Fire Department") as a firefighter. Dkt. No. 26-4 ("Moore Dep."), 14:12-17. In 2005, after being promoted to Driver/Engineer, he was responsible for ensuring that "the truck was ready to be on the front line," and that his fellow firefighters and the truck were appropriately positioned during emergencies. Id. at 14:9. Plaintiff applied for several positions at the Fire Department, but he never received a promotion after 2005. Id. at 14:8-15:3.

On October 15, 2010, Plaintiff interviewed for a position as a fire inspector. Id. at 5:14-16. The role of fire inspector increased a firefighter's salary by approximately $10,000, id. at 12:9, and included the following duties: (1) overseeing the day-to-day operations at the fire station, including inspections of the truck and other firefighters, id. at 13:1-3; (2) organizing and teaching fire safety classes for children, id. at 13:3-9; and (3) promoting the fire department during holidays, such as Halloween, id. at 13:12-15. A four-member panel, comprised of white men, evaluated the five

applicants. Id. at 23:2-8. Chief Timothy White ("Chief White"), a white man and Plaintiff's immediate superior, was also present during the interview. Id. at 23:8-16. When Plaintiff entered the room for his interview, David Hester ("Hester"), one of the members of the interview panel, allegedly said, "There he is! Get the rope and make a noose!" Id. at 26:17-18. Plaintiff turned to Chief White and said, "Y'all are [sic] heard what he said, right?" Id. at 26:18-19. Chief White responded by laughing, and saying "Yeah, yeah, what he said, we did." Id. at 26:20-21. At the end of the interview, Hester, in response to Plaintiff's offer of a handshake, "pick[ed] up the stopwatch and thr[ew] the string around [Plaintiff's] neck" simulating a hanging noose. Id. at 40:10-11; Compl., ¶ 17. The other members of the room laughed at these actions, although Plaintiff "was furious . . . [and] humiliated." Moore Dep., 5:6, 41:10-13; Dkt. No. 33-2. Plaintiff expected that Hester's commentary and actions would be addressed by those in the room, and when it became clear that it would not be, he quickly left. Moore Dep., 39:9-12, 41:8-13.

Three days later, on October 18, 2010, Plaintiff initiated the process of filing a formal grievance by talking to his Lieutenant, his direct superior in the Fire Department chain of command. Id. at 43:15-22. Plaintiff's Lieutenant immediately took the matter to Chief White. Id. at 43:11. At that time,

Plaintiff knew, through the grapevine, that he was not offered the promotion and that it went to another firefighter. Id. at 47:1-13. When Plaintiff discussed his promotion interview with Chief White, Chief White explained that the promoted firefighter received the position due to his college degree. Id. at 47:18-23. Approximately one week later, Plaintiff met with two City of Douglas officials—Judy Carter ("Carter") and Terrell Jacobs ("Jacobs")—to discuss the events that occurred during his promotion interview. Id. at 51:1-3. During this meeting, Jacobs admitted to Plaintiff that he received the highest score during the oral portion of his interview. Id. at 42:8-10. After hearing Plaintiff's complaint, Jacobs told him that he would speak with Chief White and Hester regarding the incident and that he would get back to Plaintiff. Id. at 51:4-7.

One day after meeting with the officials, Chief White instructed Plaintiff to meet him. Id. at 52:2-9. When Plaintiff arrived, all Fire Department staff members, including those from the previous night's shift, were present. Id. at 52:10-13. Addressing the gathered firefighters, Chief White said, "For a hundred years, we have been a brotherhood; we have been able to say things and do things and nobody made nothing of it; now we've got some that wants [sic] to make something out of it." Id. at 52:16-19. Then, Chief White warned the employees, keep any complaints "in your mouth" and "don't you say nothing

AO 72A
(Rev. 8/82)

about it." Id. at 53:3-4. Plaintiff alleges that both during

and after the speech, "everybody just turned looking at [him]."

Id. at 53:10-12. Plaintiff was upset, and he began to cry. Id.

at 55:14-15. On his way home, Plaintiff drove to a different

station to talk to a Captain, and when that proved fruitless, he

called Carter to discuss Chief White's impromptu meeting. Id.

at 56:11-57:8. Carter was surprised to learn that Chief White

had a meeting with his firefighters at the fire station, and she

told Plaintiff that she would try to arrange another meeting

between Plaintiff and Jacobs. Id. at 57:6-14.

On November 4, 2010, Jacobs, Carter and Plaintiff met for a

second time. Id. at 58:15-25. At this meeting, Jacobs

encouraged Plaintiff to apply for the position of lieutenant,

id. at 59:1-7, until he learned that Plaintiff still considered

filing a formal charge with the Equal Employment Opportunity

Commission ("EEOC"). Id. at 59:22. Shortly thereafter, Jacobs

sent Plaintiff a letter concluding that the racial comments did

not have an impact on the promotion process. Id. at 58:10-12.

Upon receipt of this letter, Plaintiff never had any further

contact with Carter, Jacobs, or anyone else who represented the

City of Douglas. Id. at 63:6-11.

On December 26, 2010, Plaintiff submitted an intake

questionnaire to the EEOC. Dkt. No. 10, pp. 16-19. The top of

the questionnaire stated, "**REMEMBER**, a charge of employment

discrimination must be filed within the time limits imposed by law, within 180 days or in some places within 300 days of the alleged discrimination." Id. at p. 16 (emphasis in original). The end of the questionnaire, again, stated, "If you would like to file a charge of job discrimination, you must do so . . . within 180 days from the day you knew about the discrimination . . . . If you do not file a charge of discrimination within the time limits, you will lose your rights." Id. at p. 19. Finally, the questionnaire asked Plaintiff to choose between two options: (1) speaking to an EEOC employee before filing a charge (labeled "Box 1"); or (2) filing a charge and authorizing the EEOC to investigate (labeled "Box 2"). Id. The former option expressly stated, "I understand that by checking this box, I have not filed a charge with the EEOC. **I also understand that I could lose my rights if I do not file a charge in time.**" Id. (emphasis in original). Plaintiff selected Box 1. Id. The EEOC did not respond to Plaintiff's questionnaire until he called the office on June 10, 2011. Dkt. No. 33-5, ¶ 6. When the EEOC received his phone call, the EEOC assigned Plaintiff's case to Investigator Diego Torres ("Torres"). Id. at ¶ 7.

Plaintiff alleges that on July 29, 2011, he "filed a timely charge with the [EEOC] charging the City of Douglas with discrimination against him on the basis of race." Dkt. No. 7-1. The charge listed October 15, 2010—the date of his interview—as

AO 72A
(Rev. 8/82)

the sole date on which discrimination occurred. Id. On August 22, 2013, the EEOC sent Plaintiff his Dismissal and Notice of Rights, which stated that the "EEOC [was] unable to conclude that the information obtained establishes violations of the statutes." Dkt. No. 1-1. Approximately six months later, on January 23, 2014, Torres, upon completion of his investigation, informed Plaintiff that his intake questionnaire would be considered a "charge" pursuant to Federal Express Corp. v. Holowecki, U.S. 389, 402 (2008). Dkt. No. 33-8.

## PROCEDURAL BACKGROUND

On November 15, 2013, Plaintiff filed suit in this Court against Defendants City of Douglas, Jacobs, Chief White, and Hester. Compl., ¶¶ 1-59. He seeks relief for racial discrimination under the Fourteenth Amendment's Equal Protection Clause and 42 U.S.C. § 1983 (Count 1), racial discrimination under 42 U.S.C. § 1981 (Count 2), and discrimination and harassment under Title VII of the Civil Rights Act of 1964 (Count 3). Id. at ¶¶ 34-59. Plaintiff also seeks punitive damages and an award for attorney's fees and expenses pursuant to 42 U.S.C. § 1988. Id. at pp. 10-11. On January 13, 2013, Defendants filed a Motion to Dismiss (Dkt. No. 7), to which Plaintiff responded on February 14, 2014 (Dkt. No. 10). The Court denied the Defendant's Motion to Dismiss in an Order dated July 2, 2014. Dkt. No. 19. Now pending before the Court is

AO 72A
(Rev. 8/82)

Defendants' Motion for Summary Judgment (Dkt. No. 26),
Plaintiff's Response in Opposition thereto (Dkt. No. 33),
Defendants' Reply (Dkt. No. 35), and Plaintiff's Surreply (Dkt.
No. 39).

## LEGAL STANDARD

Summary judgment is required where "the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(a). A fact is "material" if it "might affect the
outcome of the suit under the governing law." FindWhat Inv'r
Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011)
(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986)). A dispute over such a fact is "genuine" if the
"evidence is such that a reasonable jury could return a verdict
for the nonmoving party." Id. In making this determination,
the court is to view all of the evidence in the light most
favorable to the nonmoving party and draw all reasonable
inferences in that party's favor. Johnson v. Booker T.
Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir.
2000).

The party seeking summary judgment bears the initial burden
of demonstrating the absence of a genuine issue of material
fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To
satisfy this burden, the movant must show the court that there

is an absence of evidence to support the nonmoving party's case. Id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257. The nonmovant may satisfy this burden in two ways: First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. Where the nonmovant attempts to carry this burden instead with nothing more "than a repetition of his conclusional allegations, summary judgment for the defendants [is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981).

## DISCUSSION

Defendants argue that each of Plaintiff's claims—violation of Title VII, violation of § 1983, and violation of §1981—are time barred. Dkt. No. 26-1, pp. 9-13, 21-22, 26-30. Plaintiff

argues that a four-year statute of limitations applies to his claims, thus they were timely asserted and the Court should deny Defendants' Motion. Dkt. No. 33. As discussed below, Defendants are correct.

## I.    Title VII Timeliness

Defendants argue that Plaintiff's Title VII claims must be dismissed because Plaintiff failed to timely file a charge of discrimination with the EEOC within 180 days of the discrimination. Dkt. No. 26-1, pp. 8-13. Plaintiff counters that the circumstances warrant equitable tolling of the 180 day statute of limitations. Dkt. No. 33, pp. 5-8.

"Before a potential plaintiff may sue for discrimination under Title VII, [he] must first exhaust [his] administrative remedies. The first step down this path is filing a timely charge of discrimination with the EEOC." Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001) (citations omitted)(citing 42 U.S.C. § 2002e(5)(1)(e)-1). For the charge to be timely, it must be filed within 180 days of the adverse employment action. See 42 U.S.C. § 2000e-5(e)(1); Watson v. Blue Circle, Inc., 324 F.3d 1252, 1258 (11th Cir. 2003) ("Because Georgia is a non-deferral state, [the plaintiff] was required to file a Charge of Discrimination within 180 days of the alleged unlawful employment action."). If a defendant asserts that a plaintiff has failed to satisfy these

AO 72A
(Rev. 8/82)

preconditions to a Title VII action, it is the plaintiff's burden to prove that those preconditions have been satisfied. Jackson v. Seaboard Coast Line R.R. Co., 678 F.2d 992, 1010 (11th Cir. 1982).

It is undisputed that the discriminatory act occurred on October 15, 2010. Here, November 4, 2010, the date Plaintiff learned that he did not receive the promotion, is the day of the adverse employment action. The Court selects this date, approximately two weeks after the interview, to give Plaintiff the benefit of the doubt and to liberally construe his claim. Plaintiff did not file his charge of discrimination with the EEOC until July 29, 2011, 265 days later.

Plaintiff effectively concedes that the July 2011 charge was not filed within 180 days of the adverse employment action. Dkt. No. 33-1, pp. 6, 9. In opposing Defendants' Motion to Dismiss, however, Plaintiff argued that the December 2010 intake questionnaire amounted to a timely filed charge, or, alternatively, that the July 2011 charge related back to the December 2010 intake questionnaire, or that a number of extraneous documents showed that equitable tolling was appropriate in this case. See Dkt. No. 19, pp. 6-11. In ruling on the Motion to Dismiss, this Court noted that the United States Supreme Court in Holowecki held that a charge under the Age Discrimination in Employment Act of 1967 required that the

11

filing (1) include certain information, as specified by federal regulations; and (2) "must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." Id. (citing 552 U.S. at 402). Applying this standard, the Court concluded that the intake questionnaire "by itself [did] not present anything that [could] make it reasonably construed as a charge." Id. at p. 10.[1] The Court also concluded that the actual charge Plaintiff filed in July 2011 did not relate back to the December 2010 questionnaire because the questionnaire could not be construed as a charge. Id. at pp. 10-11. However, the Court reserved for consideration on Summary Judgment whether other evidence might support a finding of equitable tolling or that the intake questionnaire was actually a charge. Id. at p. 11.

Now, Plaintiff submits two reasons why the Court should conclude that he timely filed an EEOC charge. First, he argues

---

[1] The Court gave a detailed explanation for why it applied the holding of Holowecki, an Age Discrimination in Employment Act ("ADEA") case, to the present Title VII case. See Dkt. No. 19, p. 9 n.3. The Court would have reached the same conclusion under the Eleventh Circuit's "manifest-intent" approach. In Wilkerson, the Eleventh Circuit held: "To determine whether the intake questionnaire in [a] case can function as a charge, we must ask the following question: Would the circumstances of this case convince a reasonable person that [the plaintiff] manifested her intent to activate the machinery of Title VII by lodging her intake questionnaire with the EEOC?" 270 F.3d at 1319-20. Here, Plaintiff manifested that he *did not* intend to initiate a charge with the EEOC by filing his questionnaire by choosing "Box 1," which stated: "I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time." Dkt. No. 10, p. 19.

again that the intake questionnaire is sufficient to stand as a charge, citing Wilkerson, 270 F.3d at 1317, for support. See Dkt. No. 33, p. 6. Plaintiff's reliance on Wilkerson is misplaced. 270 F.3d at 1317. In the present case, Plaintiff clearly indicated that he did not want to formally file a charge with the EEOC—he marked that he wanted to speak to an EEOC employee. See Dkt. No. 10, p. 19. Plaintiff presents no authority for his supposition that the form meant the exact opposite of what it said.

The record is devoid of any written statements from Plaintiff to the EEOC with regard to this incident that would provide the court with a basis to infer that he wanted to "activate the machinery" of Title VII via the EEOC. See, e.g., Holowecki, 552 U.S. at 405 (construing an Intake Questionnaire as a charge where respondent included a six-page affidavit requesting that the EEOC "force [Petitioner] to end their age discrimination."); but see E.E.O.C. v. Summer Classics, Inc., 471 Fed. Appx. 868, 872 (11th Cir. 2012)(finding that "the only reasonable reading of [appellant's intake] questionnaire is as a request for information and answers about his rights, rather than a demand for agency enforcement" in regard to his handwritten note, listing the employment actions as "discrimination" and "a crime"). Here, the record is silent. Other courts evaluating whether an intake questionnaire

13

qualifies as a charge give significant weight to a plaintiff's choice of box. See, e.g., Etter Wilkes v. Nucor Yamato Steel Co., 2015 WL 5725771, at *8 (E.D. Ark. Sep. 29, 2015)(finding that plaintiff's intake questionnaire "specifically evinced intent not to file a charge at that time" because plaintiff selected the box expressing her desire to only speak to an EEOC employee); Lugo-Young v. Courier Network, Inc., 2010 WL 847381, at *4 (E.D. N.Y. Mar. 13, 2012)(explaining that where a plaintiff marked that she wanted to speak to an EEOC employee, her intake questionnaire could not be construed as a charge); but see Brahmana v. Lembo, 2010 WL 965296, at *1 (N.D. Cal. Mar. 17, 2010)("Because [the plaintiff] checked the box indicating that he wanted to file a charge of discrimination, the questionnaire is reasonably construed as a request for the agency to take remedial action.").

Second, Plaintiff argues that a variety of circumstantial evidence shows that he is entitled to equitable tolling of the period in which to file a charge, primarily because the delay was based on excusable neglect or excusable ignorance. Dkt. No. 33, pp. 5-8. "Title VII's timely-filing requirement is non-jurisdictional, so it may be subject to equitable tolling. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 93 (1982). "Under equitable tolling, Title VII's statute of limitation's period does not start to run until a plaintiff knew or

14

reasonably should have known that [he] was discriminated against." Wakefield v. Cordis Corp., 211 F. App'x 834, 836 (11th Cir. 2006) (quoting Carter v. W. Publ'g Co., 225 F.3d 1258, 1265 (11th Cir. 2000)). "A plaintiff who asserts the applicability of equitable tolling bears the burden of proving that it is appropriate." Carter, 225 F.3d at 1265. Equitable tolling "is an extraordinary remedy which should be extended only sparingly." Wakefield, 211 F. App'x at 836 (quoting Bost v. Fed. Express Corp., 372 F.3d 1233, 1242 (11th Cir. 2004)). However, equitable tolling "is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." Id. (quoting Sandvik v. U.S., 177 F.3d 1269, 1271 (11th Cir. 1999)).

Plaintiff argues that after he filed his intake questionnaire with the EEOC, he thought that an EEOC employee would contact him. Dkt. No. 33-1, p. 6; Dkt. No. 33-5. According to the Director of the Savannah EEOC Local Office, the EEOC received Plaintiff's intake questionnaire on December 27, 2010. See Dkt. No. 33-4, ¶ 5 ("The intake questionnaire indicated that [Plaintiff] wanted to speak with an EEOC employee *and not file a charge*." (emphasis added)). Nobody from the EEOC office responded to Plaintiff's questionnaire, but he called the office on June 10, 2011. Dkt. No. 33-5, ¶ 6.

AO 72A
(Rev. 8/82)

Significantly, that phone call occurred more than 180 days after the alleged discrimination. Id. After that call, the Director states that "the charge was assigned to Senior Investigator Torres, who handled the file until the completion of the EEOC's investigation." Id. at ¶ 7. Torres informed Plaintiff on January 23, 2014, that his intake questionnaire would be considered a "charge" pursuant to Holowecki, 552 U.S. at 402. Dkt. No. 33-8.

Plaintiff argues that these circumstances warrant equitable tolling. They do not. First, despite the EEOC's delay in responding to the intake questionnaire, that document itself extinguishes any suggestion that Plaintiff was not aware of the 180-day limitations period and that he had not, in fact, filed a charge. He checked a box on the form that stated: "I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time." Dkt. No. 10, p. 19. Thus, Plaintiff was aware of the 180-day limitations period, and the fact that his intake questionnaire was not a charge, well before the EEOC's alleged dilatoriness and before Torres' opinions on what constitutes a "charge" could have influenced Plaintiff's promptness in filing his charge.

AO 72A
(Rev. 8/82)

Second, even if Plaintiff had not explicitly manifested his understanding that he had not filed a charge and was aware of the limitations provision, he cannot now argue that he relied on Torres's interpretation of the law in failing to timely file a charge. Torres provided his legal opinion to Plaintiff in January 2014—years after the 180-day limitations period had run, and also after Plaintiff filed his actual EEOC charge. Notwithstanding that fact, Torres' opinion is not binding on this court. See Christensen v. Harris Cty., 529 U.S. 576, 587 (2000) (explaining that an opinion letter seeking advice from the Acting Administrator of the U.S. Department of Labor is "'entitled to respect' . . . but only to the extent that those interpretations have the 'power to persuade.'"; see also, Stern v. Int'l Bus. Mach. Corp., 326 F.3d 1367, 1372 (11th Cir. 2003)(explaining that Agency opinion letters are not binding). Given the timing, Torres's opinion could not possibly have influenced Plaintiff's timing in filing his charge. No extraordinary circumstance prevented Plaintiff from filing his charge. He simply did not file his charge on time, even after being informed, in writing, of the limitations period. Therefore, the extraordinary remedy of equitable tolling does not apply, and summary judgment in favor of Defendants is proper

AO 72A
(Rev. 8/82)

on Plaintiff's Title VII claims (Count III) on the grounds that they are time barred.[2]

## II.   42 U.S.C. § 1983

Count I of Plaintiff's Complaint alleges violations of the Fourteenth Amendment's Equal Protection Clause, pursuant to 42 U.S.C. § 1983.  Compl., ¶¶ 34-45.  Defendants argue that this claim is subject to Georgia's two-year statute of limitations and is thus untimely.  Dkt. No. 26-1, pp. 20-22.  Plaintiff counters that the claim is instead governed by 28 U.S.C. § 1658's "catch all" four-year statute of limitations for claims based on post-1990 congressional enactments and is thus timely asserted.  Dkt. No. 33, pp. 16-19.

"In Georgia, the proper limitations period for all § 1983 claims is the two-year period set forth in O.C.G.A. § 9-3-33 for personal injuries."  Inman v. State Bar of Ga., No. 14-13229, 2015 WL 2342850, at *2 (11th Cir. May 15, 2015) (citing Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986)). However, under 28 U.S.C. § 1658(a), "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not

---

[2]  Plaintiff argues that the Court should use the "Cure Provision," 29 C.F.R. § 1601.12(b) to find that the July, 2011, charge relates back to the November 4, 2010 Intake Questionnaire.  Given that the Court failed to find that the November 4, 2010 Intake Questionnaire qualified as a charge, Plaintiff's argument that the July, 2011, charge relates back also fails.  See Pijnenburg v. W. Ga. Health Sys., Inc., 255 F.3d 1304, 1307-08 (11th Cir. 2001) (Explaining that "[i]f the complainant's original submission suffers more than a technical defect, and is not itself recognizable as a "charge," the Cure provision does not apply.").

18

be commenced later than 4 years after the cause of action accrues." Section 1658 was enacted on December 1, 1990, so any cause of action that "arises under an Act of Congress enacted" after that date is governed by § 1658's four-year statute of limitations. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382 (2004).

Count I of Plaintiff's Complaint arises under the Equal Protection Clause of the Fourteenth Amendment. See Compl., ¶¶ 34-45. The Fourteenth Amendment was adopted in 1868, some 122 years before § 1658 was enacted. While Plaintiff correctly notes that the statute of limitations for a § 1983 claim is four years "if the claims are set forth under § 1658(a)," Plaintiff has failed to argue what post-1990 enactment, if any, is the basis for Count I. Thus, Count I of Plaintiff's Complaint is subject to a two-year statute of limitations because the cause of action arose before the 1990 Act of Congress. At the latest, the cause of action arose on November 4, 2010. This case was filed November 14, 2013, and is thus more than one year outside the two-year limitations period. Summary Judgment in favor of Defendants is appropriate as to Count I.

### III. 42 U.S.C. § 1981

As they did with Plaintiff's § 1983 claim, the parties also contest which statute of limitations—Georgia's two-year period or § 1658's four-year period—applies to Count II of Plaintiff's

19

Complaint, which is brought under 42 U.S.C. § 1981.[3]  See, e.g.,
Dkt. No. 26-1, pp. 26-30; Dkt. No. 33, p. 22.  However, before
determining the appropriate statute of limitations, the Court
must first determine what claims Plaintiff brings under § 1981.

### a. Deficiencies in Plaintiff's Complaint

The only cause of action Plaintiff raises in his Complaint
under Count II is one for failure to promote.  See Compl.,
¶¶ 46-54.  Plaintiff alleges that his "right to be free from
racial discrimination under 42 U.S.C. § 1981 includes the right
to be free of race discrimination with respect to promotions,"
and that Defendants violated these rights "by failing to promote
Plaintiff because of his race."  Id. at ¶¶ 49-50.

Defendants, in their Motion for Summary Judgment, point out
that Plaintiff's § 1981 claim does not allege a hostile work
environment claim.  Dkt. No. 26-1, p. 25.  They are correct.
Plaintiff does not respond to this contention at all, but rather
simply argues that his § 1981 claims for failure to promote *and*
hostile work environment are not subject to summary judgment.
See Dkt. No. 33, p. 22, Dkt. No. 39, p. 7.  Plaintiff never

---

[3] While Plaintiff's Complaint does not frame it this way, there is another
layer of federal civil rights law at issue in this claim.  Section 1981
creates no cause of action against a state, county, or municipal actor. Baker
v. Birmingham Bd. of Educ., 531 F.3d 1336, 1337 (11th Cir. 2008). Instead,
§ 1983 "constitutes the exclusive federal remedy for violation of the rights
guaranteed in § 1981 by state governmental units." Jett v. Dall. Indep. Sch.
Dist., 491 U.S. 701, 733 (1989); see also Butts v. Cty. of Volusia, 222 F.3d
891, 892 (11th Cir. 2000).  Thus, as Defendants note, Plaintiff's § 1981
claims against the municipal actors should be construed as § 1983 claims for
alleged violations of § 1981.  Dkt. No. 26-1, p. 25.

AO 72A
(Rev. 8/82)

addresses whether he sufficiently pleads a hostile work environment claim under § 1981.

Since Count III (Title VII claims) explicitly (and exclusively) makes hostile work environment allegations. Thus, Plaintiff's Count III claims under Title VII and Count II claims under § 1981 appear to be based on separate causes of action. The Court cannot read into the Complaint what Plaintiff has failed to allege, regardless of the arguments he makes much later in his summary judgment briefing. A plaintiff "may not amend [his] complaint through argument in a brief opposing summary judgment." Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004). The complaint does not include an allegation of a hostile work environment under 42 U.S.C. § 1981. This is in sharp contrast to, for example, the manner in which Plaintiff plead his Title VII claims. Count III of his complaint explicitly and exclusively alleged a hostile work environment under Title VII alone. No such hostile environment contention appears in the complaint with regard to 42 U.S.C. § 1981.

### b. The Statute of Limitations Is Two Years for a § 1981 Failure to Promote Claim

Defendants argue that Plaintiff's failure to promote claim, pursuant to § 1981, is subject to a two-year statute of limitations because Plaintiff's cause of action arose prior to

AO 72A
(Rev. 8/82)

to the 1990 amendment. Dkt. No. 26-1, pp. 26-30. In response,
Plaintiff asserts that the "claims arose post December 1[,]
1990. [Plaintiff] actually learned of the discrimination on
November 4, 2010." Dkt. No. 33, p. 22.

As an initial matter, the Court construes Plaintiff's claim
(Count II) as a § 1983 claim for an alleged violation of § 1981.
See supra, note 2. Section 1981 states:

> All persons within the jurisdiction of the
> United States shall have the same right in
> every State and Territory to make and
> enforce contracts, to sue, be parties, give
> evidence, and to the full and equal benefit
> of all laws and proceedings for the security
> of persons and property as is enjoyed by
> white citizens, and shall be subject to like
> punishment, pains, penalties, taxes,
> licenses, and exactions of every kinds, and
> to no other.

42 U.S.C. § 1981(a). When a plaintiff asserts a claim alleging a
violation of § 1981, the court must determine if the cause of
action arose prior to, or after, the adoption of the Civil
Rights Act of 1991 ("the Act"), as two different statutes of
limitations apply. Jones, 541 U.S. at 383. Accordingly, a
claim asserting a civil cause of action prior to the enactment
of the Act is governed by a two year statute of limitations,
O.C.G.A. § 9-3-33 ("[A]ctions for injuries to the person shall
be brought within two years after the right of action accrues"),
while a claim asserting a cause of action that arises after the
adoption of the Act is governed by a four-year statute of

AO 72A
(Rev. 8/82)

limitations, 28 U.S.C. § 1658(a) ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 year after the cause of action accrues.").

Prior to the adoption of the Act, an actionable failure to promote claim was limited to "the formation of a contract" and did not include "conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions." Patterson v. McLean Credit Union, 491 U.S. 164, 176-77 (1989). Thus, a failure to promote claim was actionable under § 1981 "[o]nly where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer." Id. at 185-86.

After the adoption of the Act, the scope for an actionable failure to promote claim broadened, as "the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyments of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Thus, in the context of a failure to promote claim, the Act "permits claims based on existing contracts, enabl[ing] a plaintiff to bring a failure to promote claim under § 1981(b) even where the

23

promotion would not amount to a new and distinct relationship."
Bryant v. Jones, 696 F. Supp. 2d 1313, 1321-22 (N.D. Ga. 2010).

A "promotion" creates the "opportunity for a new and distinct relationship between the employer and the employee." Patterson, 491 U.S. at 166. Patterson further clarified that a "promotion" is a "change in position [that] . . . involved the opportunity to enter into a new contract with the employer." Id. at 185. Determining whether a promotion qualifies as a "new and distinct" relationship is a fact-based inquiry. See, e.g., Wall v. Trust Co. of Ga., 946 F.2d 805, 808 (11th Cir. 1991)(failing to find a "new and distinct relationship" where the customer service representative and tax analyst positions "are both nonexempt salaried jobs, are relatively equal in grade (118 versus 119), provide identical benefits and compensation, and are covered by the same policies and procedures"); Edwards v. Nat'l Vision, Inc., 946 F. Supp. 2d 1153, 1170 (N.D. Ala. 2013) (defining a "new and distinct relationship" as creating "new duties, a new job title, and a significant increase in salary"); Smith v. Trane U.S., Inc., No.6:11-CV-36, 2011 WL 4944143, at *3-4 (S.D. Ga. Oct. 17, 2011) (explaining that the court needed more facts than were in the record to determine if the promotion in question would have amounted to a new and distinct relationship); Williams v. Chase Manhattan Bank N.A., 728 F. Supp. 1004, 1009 (S.D. N.Y. 1990) (failing to find a "new

AO 72A
(Rev. 8/82)

and distinct relationship" where the plaintiff failed to plead a change in responsibilities).

Plaintiff's § 1981 failure to promote claim arose prior to the enactment of the Act. Here, it is undisputed that the promotion from driver engineer to fire inspector would have provided the following: (1) a change in Plaintiff's title, Moore Dep., 5:14-16; (2) entirely new duties for Plaintiff, namely, oversight of the inspection of daily operations at the Fire Department, id. at 13:1-3; and (3) a significant increase in Plaintiff's salary (from $28,000 to $38,000), id. at 12:9. See Edwards, 946 F. Supp. 2d at 1170. It is clear that Plaintiff's promotion would have created a "new and distinct" relationship between himself and his employer. Even construing Plaintiff's cause of action liberally, Plaintiff's claim arose on November 4, 2010, yet he did not file the instant case until November 14, 2013, more than a year after the statute of limitations elapsed. Given that the statute of limitations is two years, and that Plaintiff did not file suit in a timely fashion, Plaintiff's claim fails as a matter of law. Accordingly, summary judgment in favor of Defendants is appropriate as to Count II.

## CONCLUSION

For the reasons set forth supra, Defendants' Motion for Summary Judgment (Dkt. No. 26) must be **GRANTED** in its entirety.

AO 72A
(Rev. 8/82)

The Clerk of Court is **DIRECTED** to enter the appropriate judgment.

SO ORDERED, this 30TH day of September, 2015.

LISA GODBEY WOOD, CHIEF JUDGE
STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)